**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **16-03040-jw**

## Order Overruling Objection to Confirmation

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/13/2016**



_/s/ John E. Waites_
US Bankruptcy Judge
District of South Carolina

Entered: 10/13/2016

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 16-03040-JW |
| | Chapter 13 |
| Dorothy Marie Belton, | |
| | ORDER OVERRULING OBJECTION |
| Debtor(s). | TO CONFIRMATION |

THIS MATTER comes before the Court for a hearing on the Trustee's Objection to confirmation of the Chapter 13 Plan filed by Dorothy Marie Belton ("Debtor") on June 29, 2016 ("Plan"). After considering the matters before the Court, including the Debtor's testimony, the Plan, the parties' Amended Joint Statement of Dispute, and the applicable code sections and case law, the Court overrules the Trustee's objection and makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. The Debtor filed a chapter 13 bankruptcy case *pro se* on June 17, 2016. She thereafter retained counsel, who filed the Plan and other documents on her behalf.

2. The Debtor's schedules indicate that she is a below median debtor with a current monthly income of $2,999.81, all of which is presently derived from voluntary family contributions.

3. The Debtor testified that she lives with her husband and adult son. The Debtor's son contributes $650 per month and her husband contributes a gross of $2,740.21 per month. Her schedules I and J show a Disposable Monthly Income ("DMI") of $587.51 per month.

4. The Debtor is currently unemployed due to past health issues. However, as she is

---

[1] To the extent any of the following findings of fact constitute conclusions of law they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

1

now medically fit for employment, she has been looking for a job as a paralegal.

5.  The Debtor has four (4) long-term federal student loans – one (1) Stafford Loan, serviced by Navient, and three (3) federal student loans serviced by ECMC. Each servicer has filed a proof of claim indicating a balance owed of $5,312.64 and $17,435.22, respectively.

6.  The Debtor has $0 in nonexempt equity, so in a hypothetical liquidation there would be no distribution to any unsecured creditors.

7.  The Plan provides for a monthly trustee payment of $575 for the maximum term of sixty (60) months.

8.  The Plan provides for separate classification of each of the Debtor's student loans. Specifically, the Plan proposes to pay the Navient loan, which the Debtor believes is not in default and in deferment, by applying for enrollment in "any applicable income-driven or income-based repayment" program.[2] The Plan proposes to pay the ECMC serviced loans, which

---

[2] The relevant Plan provision is as follows:

> F. Student Loans - Debtor shall be allowed to seek enrollment in any applicable income-driven or income-based repayment (known commonly as "IDR" plan with the U.S. Department of Education and/or other student loan servicers, guarantors, etc. or public service loan forgiveness programs (sometimes referred to as "PSLF") ( with such servicer or agency referred to hereafter as "Ed"), without disqualification due to bankruptcy. Ed shall not be required to allow enrollment in any repayment or forgiveness program unless the Debtor otherwise qualifies for such plan. Debtor may, if necessary and desired, seek a consolidation of her student loans by separate motion and subject to subsequent court order. Upon determination by Ed of qualification for enrollment in an IDR and calculation of any payment required under such by the Debtor, the Debtor shall, within 30 days, notify the Chapter 13 Trustee of the amount of such payment. At such time, the Trustee or the Debtor may, if necessary, file a Motion to Modify the Chapter 13 Plan to allow such direct payment of the student loan(s) and adjust the payment to other general unsecured claims as necessary to avoid any unfair discrimination. Debtor shall re-enroll in the applicable program annually or as otherwise required and shall, within 30 days following a determination of her updated payment, notify the Chapter 13 Trustee of such payment. At such time, the Trustee or the Debtor may, if necessary, file a Motion to Modify the Chapter 13 plan to allow such direct payment of the student loan(s) and adjust the payment to other general unsecured claims as necessary to avoid any unfair discrimination. During the pendency of any application by the Debtor to consolidate student loans, to enroll in an IDR or related program, direct payment of student loans under an IDR or similar program, or during the pendency of any default in payments of the student loans under an IDR or other program, it shall not be a violation of the stay or other State or Federal Laws for Ed to send Debtor normal monthly statements regarding payments due and any other communications including, without limitation, notices of late payments or delinquency. These communications

2

are long-term, unsecured loans and in default, by using the provisions of 11 U.S.C. § 1322(b)(3) and/or (5) to cure her default.[3]

---

*may expressly include telephone calls and e-mails. Debtor's attorney may seek additional compensation by separate applications and court order for services provided in connection with the enrollment and performance under an IDR or PSLF.*

[3] Specifically, the Plan provides:

*[**Am Std Asst**] Arrearage payments. The trustee shall pay the arrearage as stated in the creditors allowed claim or as otherwise ordered by the Court to **Am Std Asst (student loan**) at the rate of $**120.00** or more per month, for **student loan ending in 9957**, along with **0%** interest. The creditor shall apply trustee payments solely to those designated arrearages, i.e., those arrearages accruing before the month specified in (b.) below. For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.*

*Maintenance of regular non-arrearage payments. Beginning **n/a - loan is fully in arrears**, the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor. The creditor shall apply each payment under this paragraph solely to post-petition obligations that accrue during or after the month specified herein.*

*[**US Dept. Ed**] Arrearage payments. The trustee shall pay the arrearage as stated in the creditors allowed claim or as otherwise ordered by the Court to **US Dept. of Ed (student loan xxx7056**) at the rate of $**99.00** or more per month, for **student loan ending in 7056**, along with **0%** interest. The creditor shall apply trustee payments solely to those designated arrearages, i.e., those arrearages accruing before the month specified in (b.) below. For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.*

*Maintenance of regular non-arrearage payments. Beginning **n/a - loan is fully in arrears**, the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor. The creditor shall apply each payment under this paragraph solely to post-petition obligations that accrue during or after the month specified herein.*

*[**US Dept. Ed**]. Arrearage payments. The trustee shall pay the arrearage as stated in the creditors allowed claim or as otherwise ordered by the Court to **US Dept. of Ed (student loan xxx7059**) at the rate of $**35.00** or more per month, for **student loan ending in 7059**, along with **0%** interest. The creditor shall apply trustee payments solely to those designated arrearages, i.e., those arrearages accruing before the month specified in (b.) below. For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.*

*Maintenance of regular non-arrearage payments. Beginning **n/a - loan is fully in arrears**, the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor. The creditor shall apply each payment under this paragraph solely to post-petition obligations that accrue during or after the month specified herein.*

9. Other unsecured creditors are treated in section IV(E) of the Plan:

> *E. General Unsecured Creditors:* General unsecured creditors shall be paid allowed claims *pro rata* by the trustee to the extent that funds are available after payment of all other allowed claims. The debtor **does not** propose to pay 100% of general unsecured claims.

(emphasis original).

10. The Plan also provides for payment of the Debtor's two secured creditors, and the Debtor's attorney fees in this case.

11. The Plan was properly served on all creditors and parties in interest.

12. On July 18, 2016, the Trustee filed his Objection, contending the Plan's proposed treatment of the defaulted student loan debt unfairly discriminated against the unsecured creditors who are not to be paid in full and therefore the Plan is not proposed in good faith. At the confirmation hearing, the Trustee represented that the Plan was otherwise confirmable.

13. No creditor (including any general unsecured creditor or student loan creditor or servicer) filed an objection to the Plan.

14. At the confirmation hearing, the Debtor testified that she is a paralegal by training and trade, having worked in this field for approximately twenty years. She was forced to quit her job and take medical leave in August 2015 due to a health issue. The Debtor has since been released from medical care and is free to resume employment.

15. The Debtor incurred the majority of her student loans while enrolled at Midlands Technical College's paralegal program.

16. The Debtor has been looking for a job in her field in both the private and public sector (state and federal agencies), as either a paralegal or administrative assistant, but has thus far been unsuccessful in her search efforts. She attributes this lack of success to her defaulted student loans—which she understands disqualifies her from many positions that involve the

handling of money. She believes that the filing of her Chapter 13 case and confirmation of the Plan will help with her job prospects as it will allow the cure of her default under her student loans.

17.  The Debtor presently has no income and is relying on contributions from her husband and adult son to make payments under the Plan. The family's motivation for making contributions to the Debtor to fund the Plan appears to be primarily to assist the Debtor's desire to cure her default under the student loans and improve her employment opportunities.

18.  The Debtor and her husband fell behind on their payments to their creditors when the Debtor fell ill. Because of her unemployment and the family's financial issues, the Debtor and her family have cut back on their household budget.

19.  The Debtor's husband, who has not filed bankruptcy, is a co-debtor on one of her secured loans and on her tax debt owed to Fairfield County, but is not a co-debtor on any of the student loans. The husband is solely responsible for the debt on the parties' residence (which is in default) and he is attempting to obtain a loan modification with his mortgage lender.

20.  The parties advised the Court that if confirmed, the Plan as currently filed would provide for an 11.3% distribution to the general unsecured creditors class (IV(E) of the Plan). If all of the general unsecured creditors, including all student loan debts, were put in one class and the Debtor's family maintained their contributions to the Debtor, the distribution to all general unsecured creditors would be 42.8%. If all of the general unsecured creditors were put into one class and the Debtor received no contributions from her family, the distribution to general unsecured creditors would be 2% in a 36 month plan, and 3% in a 60 month plan.[4] If the Debtor

---

[4] Because she is below-median, the Debtor is only required to propose a 36 month plan. *See* 11 U.S.C. § 1322(d)(2).

5

filed a Chapter 7 case, it appears that the general unsecured creditors would receive no payment or dividend.

## ISSUE

Does the Debtor's separate classification of unsecured student loan debts in order to cure the default unfairly discriminate against the general unsecured creditor class so as to warrant denial of confirmation?[5]

## CONCLUSIONS OF LAW

Unlike subsection (a) of 11 U.S.C. § 1322,[6] which sets forth what a plan "shall" contain, subsection (b) contains a list of eleven (11) provisions that a plan may contain. Section 1322(b)(3) of the Code provides that a chapter 13 plan may, "provide for the curing or waiving of any default." While this subsection is usually used by debtors as a means to cure or waive defaults in short-term, secured debts, the power to use (b)(3) to cure or waive a default is not limited to any particular kind or term of debt. Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, § 171.1, at ¶ 14 (4th Edition, 2d Rev. June 17, 2004).

Although normally used in the context of addressing long-term mortgage debt, the Code explicitly contemplates the Debtor's use of § 1322(b)(5) to resolve defaults in long-term unsecured debt. Specifically, this section provides that a plan may:

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim . . . on which the last payment is due after the date on which the final payment under the plan is due.

---

[5] It does not appear from his objection that the Trustee is asserting that the Plan's proposed classification and treatment of the Navient student loan debt (submission of an IDR plan and, upon qualification, direct payment) is unfairly discriminatory. *See infra* n.14.

[6] Hereinafter, all references to provisions under the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be by section number only.

6

11 U.S.C. § 1322(b)(5). A number of jurisdictions routinely approve plans that provide for "cure and maintain" treatment for student loan debt. *See, e.g., In re Carrillo*, 421 B.R. 540, 545 (Bankr. D. Ariz. 2009) (noting that debtors are permitted to maintain regular student loan payments as part of a Chapter 13 plan); *In re Pageau*, 383 B.R. 221, 229 (Bankr. D.N.H. 2008) ("In this district, student loan debts may be paid directly and separately during a debtor's chapter 13 plan in accordance with § 1322(b)(5) as long as payments are to maintain and keep current long-term student loan debt, i.e., loans that mature after plan completion, with no acceleration of [payments on] that debt."); *In re Delbecq*, 368 B.R. 754, 759 and n.8 (Bankr. S.D. Ind. 2007) ("In this jurisdiction, the Court has historically allowed debtors to classify separately student loan indebtedness pursuant to 11 U.S.C. § 1322(b)(5)."); *In re Machado*, 378 B.R. 14, 16 (Bankr. D. Mass. 2007) ("It is clear the debtor may employ cure and maintain treatment under Section 1322(b)(5) for her student loan debt given the occurrence of prepetition defaults and original loan maturity dates after the final Plan payment date.").

While it appears clear that a debtor may use subsection (b)(3) or (b)(5) to separately classify student loan debt for purposes of curing a default, in some courts there is a question whether, if a plan separately classifies the debt for purposes of curing a default, the unfair discrimination prohibition of § 1322(b)(1) would apply. Subsection (b)(1) provides in relevant part that a plan may:

> designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated . . . .

11 U.S.C. § 1322(b)(1). The case law on the use of § 1322(b)(3) in this context is scarce, and there appears to be little or no discussion of the interplay between § 1322(b)(1) and (b)(3). *See* Lundin, *supra*. In contrast, there is a split of authority on the issue of whether a debtor who

7

utilizes subsection (b)(5) to separately treat long-term unsecured debt is also required to comply with the anti-discrimination provisions of § 1322(b)(1).

A minority of Courts addressing this issue have ruled that a debtor's use of subsection (b)(5) to deal with long-term unsecured debt supersedes the provisions of subsection (b)(1). *See, e.g., In re Truss*, 404 B.R. 329, 332 (Bankr. E.D. Wis. 2009) ("Because section 1322(b)(5) is specific and clear in its language, statutory construction principles dictated that it trump the more general terms of section 1322(b)(1). In other words, if the provisions of section 1322(b)(5) for the cure of arrearages and maintenance of regular payments on long-term student loan indebtedness apply, then the specific provisions of section 1322(b)(5) supercede [sic] the general unfair discrimination provisions of section 1322(b)(1)."); *In re Williams*, 253 B.R. 220, 227 (Bankr. W.D. Tenn. 2000) (inclusion of unsecured creditors in (b)(5) indicates that it is a type of discrimination that is expressly contemplated and sanctioned by the Code); *In re Hanson*, 310 B.R. 131, 134 (Bankr. W.D. Wis. 2004) (specific statutory provision of § 1322(b)(5) trumps the general provisions of (b)(1)); *In re Johnson,* 446 B.R. 921, 925 (Bankr. E.D. Wis. 2011) (citing with favor *Truss* analysis, *supra*).[7]

In contrast, a majority of courts hold that each part of § 1322(b) must be harmonized with the others; therefore, a debtor who proposes to separately classify long-term student loan debt using § 1322(b)(5) must also satisfy subsection (b)(1) and prove to the court's satisfaction that the separate classification does not unfairly discriminate. *See, e.g., In re Brown,* 500 B.R. 255, 265 (Bankr. S.D. Ga. 2013) (separate student loan classification must undergo unfair discrimination analysis); *In re Pracht*, 464 B.R. 486, 490 (Bankr. M.D. Ga. 2012) (subsection (b)(5) does not

---

[7] As recognized by the *Johnson* court, "A literal interpretation of both subsections [(b)(1) and (5)] leads to a mathematical impossibility for a vast majority of Chapter 13 debtors who cannot afford to pay unsecured claims in full, because the payment in full to long-term debts appears to discriminate against other unsecured creditors who may be paid less than 100%." *Johnson*, 446 B.R. at 925.

8

"trump" subsection (b)(1)); *In re Harding*, 423 B.R. 568, 571 (Bankr. S.D. Fla. 2010) (subsection (b)(5) cannot be read in isolation); *In re Edmonds*, 444 B.R. 898, 900 (Bankr. E.D. Wi. 2010) (same); *In re Webb*, 370 B.R. 418, 423 (Bankr. N.D. Ga. 2007) (without declaring the majority position correct, court finds it appropriate to make a determination of whether the proposed plan unfairly discriminated); *In re Simmons*, 288 B.R. 737, 743 (Bankr. N.D. Tex. 2003) (code does not contain an exception to § 1322(b)(1), which must be considered when evaluating treatment of a debt under (b)(5)); *In re Chandler*, 210 B.R. 898, 904 (Bankr. D.N.H. 1997) (separate classifications under § 1322(b)(5) are subject to unfair discrimination prohibition of § 1322(b)(1)); *In re Coonce*, 213 B.R. 344, 347 (Bankr. S.D. Ill. 1997) (same).

To address this split, and in consideration of the Trustee's objection, the Court must therefore analyze the general requirements of § 1322(b)(1).

On the specific issue of discrimination, a debtor who has proposed a separate classification has the burden of proving by a preponderance of the evidence that the separate classification does not unfairly discriminate. *In re Moore*, 31 B.R. 12, 16 (Bankr. D.S.C. 1983); *In re Prachet*, 464 B.R. at 489; *In re Kalfayan*, 415 B.R. 907, 909 (Bankr. S.D. Fla. 2009). "A debtor must be able to articulate a reason why the discriminatory treatment is being proposed, and be able to demonstrate that a lesser discriminatory means of treatment is not advisable." *In re Mason*, 456 B.R. 245, 252 (Bankr. N.D. W. Va. 2011).

The Code does not define either the term "discriminate"[8] or the phrase "unfairly

---

[8] As explained by one court:

"To discriminate," in its broadest sense, is to make a distinction or to note a difference between two things. Derivatively, it is to treat two things differently on account of a distinction between them. Accordingly, in § 1322(b)(1), to discriminate is simply to treat two classes differently on the basis of a difference between them; the difference in treatment need not be unfair, wrongful, or even adverse to a class in order to constitute discrimination within the meaning of this statute. The treatment need only be different.

*Bentley v. Boyajian* (*In re Bentley*), 266 B.R. 229, 237 (1st Cir. B.A.P. 2001) (internal citations omitted).

9

discriminate." As recognized by numerous courts, § 1322(b)(1) does not prohibit all discrimination–only "unfair" discrimination is barred. *See Bentley v. Boyajian* (*In re Bentley*), 266 B.R. 229, 232 (1st Cir. B.A.P. 2001) ("Because § 1322(b)(1) distinguishes between discrimination that is unfair and discrimination that is not, we understand 'discriminate' to have no pejorative connotation here"); *In re Moore*, 31 B.R. at 17 ("What constitutes fair discrimination will vary from case to case, and we cannot offer a generally applicable definition. The court must examine the amounts proposed for each class in light of the debtor's reasons for classification, and exercise sound discretion."); *In re Cook*, 26 B.R. 187, 190 (D.N.M. 1982) ("A classification is not *ipso facto* unfairly discriminatory because it provides for a greater percentage of payment to some unsecured creditors than to others."). Indeed, discriminatory treatment that is not unfair is not prohibited. *See, e.g., In re Leser,* 939 F.2d 669, 672 (8th Cir. 1991) (importantly, not all discrimination among classes of claims is prohibited, it is only unfair discrimination that is impermissible); *Bentley v. Boyajian*, 266 B.R. at 237 ("Section 1322(b)(1) prohibits only such discrimination as is unfair to any class of unsecured claims and, conversely, sanctions such differences in treatment as are fair."); *In re Kalfayan*, 415 B.R. at 911 (subsection (b)(1) may be satisfied if the debtor can show that creditors are benefitted by the discrimination); *In re Chandler*, 210 B.R. at 904 (the inclusion of long term unsecured debt in § 1322(b)(5) evidences congressional intent to allow for different treatment of long term unsecured debt).

Historically in this district, the Court has utilized a five (5) factor test to determine whether a plan's classification is unfairly discriminatory:

> (1) Whether there is a reasonable basis for the classification;
> 
> (2) Whether the classification is necessary to the debtor's rehabilitation under Chapter 13;
> 
> (3) Whether the discriminatory classification is proposed in good faith;

10

    (4) Whether there is a meaningful payment to the class discriminated against; and

    (5) The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*In re Moore*, 31 B.R. at 17 (internal citations omitted); *In re Girardeau*, 35 B.R. 9 (Bankr. D.S.C. 1983);[9] *In re Wallace,* Case No. 95-70780-JBD, slip op. (Bankr. D.S.C. June 22, 1995); *In re Wilmon*, Case No. 92-71900-WTB, slip op. (Bankr. D.S.C. 1992). This test is an example of the various multi-factor tests employed by other courts in this Circuit and across the country. *See, e.g., In re Leser,* 939 F.2d 669 (8th Cir. 1991); *In re Birts*, 2012 WL 3150384 (D. E.D. Va. 2012); *In re Linton*, 2011 WL 3207366, at *2 (Bankr. E.D. Va. July 27, 2011); *In re Kolbe*, 199 B.R. 569 (Bankr. D. Md. 1996); *In re Delauder*, 189 B.R. 639 (Bankr. E.D. Va. 1995); *In re Husted*, 142 B.R. 72 (Bankr. W.D.N.Y. 1992). *But see In re Mason,* 456 B.R. 245, 251 (Bankr. N.D. W. Va. 2011) (each plan should be adopted on a case by case basis in light of the twin aims of the code – providing the debtor with a fresh start and providing a mechanism for the collection of debts); *In re Lawson*, 93 B.R. 979, 984 (Bankr. N.D. Ill. 1988) (shunning a four-part test and determining that standard should be that a discriminatory treatment is fair and therefore permissible to the extent and only to the extent that it rationally furthers an articulated, legitimate interest of the debtor); *In re Hamilton*, 102 B.R. 498 (Bankr. W.D. W. Va. 1988) (adopting *Lawson* test); *In re McCullough*, 162 B.R. 506 (Bankr. N.D. Ill. 1993) (applying a balancing test).

---

[9] Both *Moore* and *Girardeau* were decided in 1983 and involved a debtor's attempt to use § 1322(b)(5) to separately classify consumer debts that were co-signed by a non-filing co-debtor. In the years following these rulings, the Bankruptcy Code has been overhauled and amended several times. Among the amendments that have occurred is the inclusion of language in § 1322(b)(1) that expressly permits the separate classification denied by the *Moore* and *Girardeau* courts. 11 U.S.C. § 1322(b)(1) ("the plan may . . . designate a class . . . of unsecured claims . . . but may not discriminate unfairly against any class so designated; **however, such plan may treat clams for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims** . . . .") (emphasis added).

Despite a desire for a bright line test, even in those courts that employ a more formulistic approach, ultimately the analysis in each case is fact intensive. *In re Crawford,* 324 F.3d 539, 543-43 (7th Cir. 2003) (After failing in its efforts to identify a satisfactory bright line test, the court counseled "if without classification the debtor is unlikely to be able to fulfill the Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be with classification, then classification will be a win-win outcome."); *In re Groves*, 39 F.3d 212, 214 (8th Cir. 1994) (recognizing that the application of the "discriminate unfairly" standard may "involve little more than exercise of the bankruptcy court's broad discretion"); *In re Pracht*, 464 B.R. 486, 491 (Bankr. M.D. Ga. 2012) (recognizing that "the inevitable consequence of any multi-factored test . . . is that it devolves into a 'totality of the circumstances' or 'case-by-case' analysis, thereby running the risk of being depicted as an *ad hoc*, potentially purely subjective determination").

In this case, as a result of the separate classification for the purpose of curing a default, the Debtor is proposing to pay the separately classed student loan creditors more than what is being paid to other unsecured creditors. "By its very nature, this treatment is discriminatory; however, just because treatment is discriminatory does not mean that it is unfairly discriminatory." *In re Mason*, 456 B.R. at 249–50. The critical issue under § 1322(b)(1) is not merely the difference in payment amount, but the reason for the difference in treatment.[10]

While the undersigned is unwilling to abandon the framework established by my predecessors on the Court, it appears that factor five, the difference in payment percentage, has been unduly emphasized in prior cases. Therefore, in my view, the following streamlined test

---

[10] To the extent that *Moore* and its progeny could be interpreted to say that a classification that merely results in a payment of a higher percentage to the separately classified debt (in this case a student loan debt) is a *per se* violation of § 1322(b)(1) that precludes confirmation of a plan, I disagree.

12

better reflects the balance of factors pursuant to which a debtor must submit evidence to enable the Court to analyze the separate classification of unsecured debt:

> (1) Is there a good faith, rational basis for the separate classification;
>
> (2) Is the separate classification necessary to the debtor's rehabilitation under Chapter 13; and
>
> (3) Is there a meaningful payment to the discriminated class.[11]

Applying this test to the facts before the Court, the Court finds that the Plan's separate classification of the Debtor's student loans is permissible and that the proposed classification does not unfairly discriminate.

### 1. There is a good faith, rational basis for the proposed classification.

The evidence before the Court is that there is a good faith, rational basis for the proposed classification, with the reason being to cure the student loan default and to improve the Debtor's prospects for reemployment as a paralegal. The Debtor's uncontroverted testimony was that despite her twenty-year career as a paralegal, she has not been employed since August 2015 and that, while her initial job loss was health related, her efforts to obtain new employment as a paralegal have been stymied by the default status of her student loans. The Debtor testified that she cannot obtain either a state or federal job as a paralegal or administrative assistant while her student loans are in default because as a paralegal, this default status is perceived by employers to impact her reliability in the handling of funds.

Additionally, while the Debtor is currently unemployed with no income from wages with which to make payments to creditors, the Debtor, through her family's voluntary contribution, has proposed the Plan to enable the Debtor to pay a dividend to all creditors with a primary goal

---

[11] Helpful, but not controlling to this analysis, is evidence indicating whether the proposed distribution is greater than would be received by the unsecured creditors in a Chapter 7 liquidation, and the degree of difference in distributions between a plan containing separate classifications and one without.

13

of curing the default in her student loans.[12] The Debtor has committed to 60 monthly payments of $575. This, in and of itself, is notable because as a below median debtor, the Debtor is only required to file a 36 month plan. 11 U.S.C. § 1322(d)(2). The voluntary commitment to submit herself to 24 additional months of payments is evidence of the Debtor's good faith. The Debtor could convert this case to chapter 7, discharge the general unsecured debt, and then file a new chapter 13.[13] Under such a "chapter 20" procedure, the Debtor could reorganize her student loan debt and pay nothing to the other (then discharged) unsecured creditors. Instead, the Debtor has chosen to propose the Plan which provides for better treatment of both her student loan debt and her general unsecured debt.

**2. The separate classification is necessary to the Debtor's rehabilitation.**

The evidence indicates that a continuation of the default status on the Debtor's student loans impairs her ability to regain employment and meet her and her family's financial needs. The rehabilitation proposed in the Plan would enable her to both cure her default in her student loans and enable her to address her debts for which her non-filing spouse is a co-debtor. Merely filing Chapter 7 will not resolve the Debtor's current difficulties with her student loan creditors and may limit her family's ability to retain essential secured property.

**3. There is a meaningful payment to the class discriminated against.**

It is undisputed that under the Plan, the separately classed general unsecured creditors will receive 11.3%. This is a meaningful distribution, and more than general unsecured creditors would receive either in a Chapter 7 liquidation case or in many of the typical Chapter 13 cases

---

[12] The family's voluntary contribution appears to be the equivalent of excess disposable income. Because she is below median, the Debtor does not have to offer all of her projected disposable income into the plan for the benefit of unsecured creditors. *See In re Abaunza*, 452 B.R. 866, 876 (Bankr. S.D. Fla. 2011) (recognizing that paying student loans with discretionary funds did not unfairly discriminate).

[13] This is commonly termed a "chapter 20."

filed in this district. Although the Trustee has indicated that if the separate classification were eliminated, general unsecured creditors would receive 42.8%, this calculation does not take into consideration the fact that if the Plan is not confirmed, the assistance from the Debtor's family will likely be withdrawn. Without the family's contribution, the combined class of general unsecured creditors would receive only 2% over 36 months.

Although the Plan does not propose to pay the separately classed general unsecured creditors the same dollar amount as the student loan creditors, it is clear that the Plan is paying all general unsecured creditors more and in a better manner than they would receive if the Plan were not confirmed. The financial differential resulting from the separate classification and treatment is not excessive, and the benefit to the general unsecured creditors is meaningful.

## **CONCLUSION**

Based on the facts presented, the Court finds that the discrimination caused by the separate classification of student loans proposed by the Debtor is not unfair and is proposed in good faith. The Plan uses the funds contributed to the Debtor by her family to fund 100% of the Plan, to remedy the student loan default so she can apply for state and federal jobs in her field, and to provide creditors with more than they would receive in a hypothetical chapter 7 case or a chapter 13 case without her family's contribution. The proposed Plan promotes the policy of paying student loans and curing student loan default so the Debtor can achieve a fresh start and her goals of reorganization, of obtaining employment, and of paying her creditors to the best of her ability.

THEREFORE, this Court holds the plan does not unfairly discriminate and meets the requirements of § 1322. The Trustee's objection is overruled.[14] The Plan shall be confirmed by

---

[14] It does not appear from his objection that the Trustee is asserting that the Plan's proposed classification and treatment of the Navient student loan debt (submission of an IDR plan and, upon qualification, direct payment)

15

<s>
</s>
<s>
</s>
<s>
</s>
<s>
</s>
<s>
</s>

separate order.[15]

Finally, according to the undersigned's Chambers Guidelines, inasmuch as Counsel has expended additional time and effort to represent the Debtor in this contested matter, Counsel is hereby awarded an additional $1,500 in attorney's fees to be paid through the Debtor's plan by the Trustee or directly by the Debtor.

**AND IT IS SO ORDERED.**

---

is unfairly discriminatory. However, to the extent that the Trustee has such an objection, the Court overrules it, adopting the reasoning of *In re Knowles*, 501 B.R. 409 (Bankr. D. Kan. 2013) as it relates to the permissibility of a debtor's use of assets not required by the Code to be contributed to the plan, towards direct payment of student loans. *Id.* at 417-418. With its proposal to restructure the Navient debt to a more affordable level through the use of an IDR plan, and with payments under the approved IDR plan to be made from the "discretionary income" provided by the Debtor's family members, the proposed treatment of Navient does not unfairly discriminate against other general unsecured creditors.

[15] Inasmuch as the requirements of § 1322(b)(1) are met in this case, the Court does not need to determine the issue of whether use of § 1322(b)(3) and/or (5) also requires compliance with the requirements of § 1322(b)(1). Additionally, it appears from the Plan that the Debtor does not propose to pay interest to the separately classified student loan creditors, and § 1322(b)(10) was not raised as a ground for objection; therefore subsection (b)(10) does not need to be addressed.